BONNER, executrix, *et al. v.* BELL *et al.*

No. 16824. OCTOBER 12, 1949.

*Emmett Smith, Earl Staples* and *R. J. Brown,* for plaintiffs in error.

*Boykin & Boykin* and *Willis Smith,* contra.

ALMAND, Justice. It appears from the foregoing statement that—counsel for the defendants having stipulated that the real and personal property of B. F. Banks' estate was sold by the executrix at private sale, without advertisement, and the question whether the will of the testator authorized the executrix to sell such property at private sale being one of law—the sole issue of fact remaining in the case was whether the executrix had made a proper accounting of the proceeds of the sales of personal property. Under the direction which the judge gave to this case, it is apparent that he held as a matter of law that the provisions of the will did not empower the executrix to sell either the real or personal property at private sale.

Special grounds 1 and 2 of the motion for new trial complain that the court erred in allowing answer to be made to two questions propounded to the executrix while she was being examined as a witness—as to whether or not she had obtained orders of court to sell the stock or other property of the estate; also whether the sale of the property had been advertised. Over objection of counsel for the defendants that under the will the

executrix would not have to obtain an order, and did not have to advertise the property for sale, the judge permitted the witness to answer that she did not obtain an order, nor did she advertise the sale. The correctness of this ruling, therefore, depends upon the question as to whether or not the executrix, under the will of the testator, had the power to sell the real and personal property of the estate at private sale.

■ Code § 113-1717 provides: "If a will shall authorize a private sale by the executor, an administrator with the will annexed may execute the power and sell the property without order from the ordinary. If the will shall merely designate the property to be sold, without specifying the mode of sale, no application for leave to sell shall be necessary; but in other respects the executor or administrator with the will annexed shall comply with the requisitions before specified." The "requisitions" referred to in this section have reference to advertising and public sale. *Anderson* v. *Holland,* 83 *Ga.* 330 (9 S. E. 670); *Chattanooga Iron &c. Corp.* v. *Shaw,* 157 *Ga.* 869, 881 (122 S. E. 597). Code § 37-607 provides: "Powers of sale in deeds of trust, mortgages, and other instruments shall be strictly construed and shall be fairly exercised. In the absence of stipulations to the contrary in the instrument, the time, place, and manner of sale shall be that pointed out for public sales."

Sales by executors, if not otherwise provided by the will, must be at public outcry to the highest bidder. The purchaser is bound to see that the executor is apparently proceeding under the forms prescribed by law. *Neal* v. *Patten,* 40 *Ga.* 363 (1). If power be given in a will to sell land or personal property, this only dispenses with the necessity of an order of the court of ordinary, and if the will does not expressly or impliedly provide for a private sale, such sales must be public; otherwise such sales are void. *Worthy* v. *Johnson,* 10 *Ga.* 358 (2) (54 Am. D. 393); *Moore* v. *Turner,* 148 *Ga.* 77 (2a) (95 S. E. 965). We therefore turn to the will to ascertain whether or not the testator expressly or impliedly authorized the executrix to sell the property of the estate at private sale. Under the view that we take of this matter, it is not necessary to determine whether or not the will granted the executrix power to sell the property of the estate without obtaining an order of court.

Item 6 of the will, after appointing Joannah Bonner executrix, provided: "I desire that such executrix have full power to handle and dispose of my estate, without making any bond, and that such executrix be in no manner restricted in the handling of my said estate." There is no other provision in the will that deals with the method or manner of how the executrix should "handle and dispose of my estate," other than Item 5, which provides: "After deducting the above special bequests, which are made for the purpose of equalizing the distribution of my estate to that extent, it is my will that the remainder of my estate be divided equally among my heirs at law." There being no express power to sell the property of the estate at private sale, we must determine whether or not the testator intended or impliedly authorized the executrix to sell such property at private sale.

In *Turner* v. *Baird,* 159 *Ga.* 277, 279 (125 S. E. 475), this court said: "If the executor is clothed solely with the power to sell, and there is nothing to indicate an intention on the part of the testator to authorize him to sell at private sale, then he must sell after advertising and at public outcry. When the intention of the testator is in doubt as to the mode of sale, the safe rule is to adhere to the mode of sale prescribed by law. To take the case out of the general rule requiring executors to sell at public sale, the intention of the testator should be plainly and distinctly expressed in the words of the power, or should be found by necessary implication from the language used in conferring such power."

In *Turner* v. *Peacock,* 153 *Ga.* 870 (113 S. E. 585), this court had before it exceptions to a charge of the court which instructed the jury that under the will of the testator his executrix had no right to make a private sale of land, it being insisted by the movant that she did have such power. The will in that case provided as follows: "That all of my personal property be reduced to cash by my executrix, hereinafter mentioned, either at public or private sale as such executrix may prefer, without any order of court, and that my land and houses may be rented out or sold as my executrix may wish. My executrix can sell or rent any of my land or houses without any order of court." This court held that this item of the will did not confer upon the ex-

ecutrix the right to make a private sale of land, that the expression, "as my executrix may wish," did not relate to the manner of sale, and that the right to sell without an order of court did not dispense with the necessity of a public sale.

It is insisted by counsel for the defendants that, under the rulings of this court in *Mattox* v. *Eberhart,* 38 *Ga.* 581, *Anderson* v. *Holland,* 83 *Ga.* 330 (9 S. E. 670), *Chattanooga Iron &c. Corp.* v. *Shaw,* 157 *Ga.* 869 (supra), and *Turner* v. *Baird,* 159 *Ga.* 277 (supra), the executrix was impliedly given the power to sell the real and personal property of the estate at public or private sale.

In *Mattox* v. *Eberhart,* 38 *Ga.* 581 (supra), the testator directed that all of his property be kept together during the widowhood of his wife, to be used for her support and maintenance and education of his minor children, and as each minor became of age, the executor was directed to give such child a certain amount of money. In order to enable his executor to carry out these objects, he was given power to sell "any of my property, and to buy or to exchange for other property," and it was held that it was the intention of the testator to give the executor power to sell at private sale.

In *Anderson* v. *Holland,* 83 *Ga.* 330 (supra), an executrix under the will was authorized in her discretion to sell and divide the money arising from a sale, between the testator's brother, who owned an interest. in the land, and his representatives. It was held that, if the will failed to specify the mode of sale, it necessarily by implication authorized a private sale. This because, the court said, the nature of the ownership of the property, in which the testator had a part interest with his brother, was such that the testator did not contemplate that buying or dividing the property could be done at public outcry.

In *Chattanooga Iron &c. Corp.* v. *Shaw,* 157 *Ga.* 869 (supra), the testator had authorized his executors, after holding the residuum of the estate in trust for five years, "to sell any or all of the property of said trust estate, and to reinvest the proceeds of any such sale in such other safe and suitable form as shall seem best to them." This court said that it clearly appeared that the intention of the testator was that his executors be, not only vested with a discretion in selling the property, but also a discretion as to reinvestment of the proceeds of any sale, and there-

fore that the method of sale as well as the method of investment was left to the discretion of the executors.

In *Turner* v. *Baird*, 159 *Ga.* 277 (supra), a wife by will had bequeathed to her husband all of her property during his life, with remainder to her children, and provided that he could at any time he thought to the best interest of her family dispose of any of her property, replacing it with other property for the children. The question in that case was whether or not the executor under such provisions of the will could lawfully sell without advertising and without selling at public outcry certain real estate. This court took into consideration, in seeking to find the intention of the testatrix, the fact that he, the husband, and the children, were the sole beneficiaries of the wife's estate, and that he was invested with very large discretion as to its disposition whenever he thought it best for the interest of the family, and this both as to the mode and time he might think best, and held that he was authorized to sell any of the property of the testatrix at private sale.

It will thus be seen, from an examination of these cases, that in each one the court held that, in view of peculiar and particular circumstances, it was the intention of the testator or testatrix to authorize sales of real or personal property of the estate at private sale. We are unable to find from a reading of the entire will here involved that the testator intended that his executrix should have the power to sell the property of his estate at private sale, even if it be conceded that he authorized the executrix to sell and dispose of the estate without an order of court. There is no other provision in the will that expressly or impliedly shows an intent that the testatrix, after payment of debts and complying with special bequests, would be authorized to sell the remainder of the estate at private sale. Under the provisions of the will, after directing that the executrix pay the testator's debts, including funeral expenses, he first gave and devised all of his estate to his wife for life or widowhood, and after her death or remarriage certain specific bequests were made to his daughter Joannah and two of his grandchildren; and after making such disposition, he provided in Item 5 that, after deducting a stated bequest, "it is my will that the remainder of my estate be divided equally among my heirs at law." It will thus be

seen that, except for a direction as to the payment of debts and funeral expenses and special bequests, there was no other object of the will under which it was necessary that the remainder of the estate be sold. It thus appears that it was the intent of the testator that, after such payments, the estate should be divided, and, unlike the cases relied on by the defendants, there are no special circumstances that placed any discretion and power in the executrix to sell the estate and divide the proceeds among the heirs.

We are therefore of the opinion that the trial judge properly held that the will did not vest any power or discretion in the executrix to sell the real and personal property of the estate at private sale. Consequently, it was not error, as claimed in special grounds 1 and 2, for the court to admit in evidence proof that the executrix had sold real and personal property of the estate without advertising and at private sale.

■ During the trial, while the executrix was testifying, counsel for the defendants asked this question, "Was all the money taken in from the estate of B. F. Banks accounted for?" and the witness answered, "It was." On objection of counsel for the plaintiffs, the question and answer were ruled out. In a special ground of the motion for new trial, complaint is made that this ruling was error. The issue before the jury was whether the executrix had accounted for all the moneys of the estate. The question called for a conclusion, and sought to elicit an answer to the question that the jury were to determine. This ground is without merit.

■ The sole remaining question is whether there was any issue of fact on the question of whether or not the executrix had properly accounted for funds arising from sale of the cement stock, to submit to the jury. It is our opinion that there was no issue in this regard to submit to the jury, but that the evidence demanded a verdict for the plaintiffs. The executrix testified that she sold the shares of capital stock of Portland Cement Company, but did not remember how many shares there were or to whom they were sold. She testified that she "got ten cents on the dollar," and actually received only $2575 in money therefor. She did not remember whether she deposited the money received from the sale to her credit as executrix, but testified that she did

not have any banking account in her name as executrix; that her husband looked after all of it, and made all of the sales; that she sold the stock before her mother's death, and had no record of amounts of disbursements, but that her husband kept these records, and deposited every dollar of it in his own name as his own funds; that she did not know how much money had been collected on accounts and notes owing to the estate; that her husband kept up with all of that for her; that her mother had some property of her own when she died in 1943, and had some money in the bank; the witness got that money; her mother during her life had money to pay her individual bills; there had never been an appraisement made of the value of her father's estate; and the witness never got any order of court to sell the cement stock, nor did she advertise its sale.

L. L. Bonner, the husband of the executrix, identified a paper which appears as an exhibit in the evidence, containing a list of notes and debts due the estate, and assets of the estate for a period from November 1932 to March 1945, as well as a list of disbursements of the estate.. This paper shows the receipt of approximately $8000, which includes $2525.50 from the sale of the cement stock at $2575.50, less an attorney's fee of $50, and "from sale of land" $1250. The total amount paid out aggregates approximately $1200. This witness testified that the cement stock was sold to a man in Birmingham, Alabama, whose name he did not remember, and was paid for by a check made payable to Mrs. Bonner as executrix; that after his wife endorsed it he deposited the check in his, Bonner's, account; and that in his opinion the amount received represented the fair value of the stock, but that he does not remember how many shares were received.

If an executor sells the personal property of an estate without lawful authority at private sale, he is liable for the real value of such property. *Smith* v. *Griffin*, 32 *Ga.* 81 (2). The jury in this case, under the instruction of the court, returned a verdict which included a finding that the plaintiffs "recover for use of estate B. F. Banks the Portland Cement stock."

The court having correctly ruled as a matter of law that the executrix had no authority to sell the real or personal property of the estate at private sale, and it appearing without dispute

that the proceeds of the sale of stock were turned over to the executrix and her husband, and were never accounted for by the executrix to the heirs and legatees to whom accounting should have been made, it was not error to direct the jury to return a verdict for the plaintiffs, nor to overrule the motion for a new trial.

*Judgment affirmed. All the Justices concur, except Wyatt, J., disqualified.*