### COOGLE *et al.* v. GREEN *et al.*

Under the pleadings and evidence in the case, the court erred in directing a verdict for the defendants.

DECEMBER 12, 1913. REHEARING DENIED JANUARY 14, 1914.

Complaint for land. Before Judge Littlejohn. Macon superior court. December 27, 1912.

*J. J. Bull & Son,* for plaintiffs.

*W. W. Dykes* and *R. L. Greer,* for defendants.

BECK, J.    J. M. Coogle and others brought suit against Green and others to recover certain lands, alleging title in themselves. Mary J. Taylor, the wife of William J. Taylor, in the year 1866 had been allotted dower in these lands. Wm. J. Taylor died in the year 1863. Mary J. Taylor died in the year 1910. The plaintiffs were heirs of Wm. J. Taylor. After his death John T. Coogle administered upon his estate. Mary J. Taylor had sold her life-estate in the land prior to her death, and this interest in the land had gone into the defendants through a series of conveyances. The defendants, to show title in themselves to the remainder interest in the lands after the extinguishment of the dower, relied upon a sheriff's deed and the subsequent conveyances from the grantee in the sheriff's deed. The sheriff's deed was executed December 20, 1878, and recites that the property conveyed was sold under an execution issued from the superior court of Macon County, "in favor of the officers of court against the estate of Wm. J. Taylor, and sold for the purpose of satisfying this execution." After the evidence had been introduced and argument of counsel heard, the court directed a verdict for the defendants. Plaintiffs made a motion for a new trial, which was overruled, and they excepted.

The plaintiffs contend that the sheriff's sale was invalid and the deed void, upon several grounds. Under the view which we take of the case, however, it is necessary to deal with only one of these grounds; for we agree with the plaintiffs that the sale was invalid and that the sheriff's deed passed no title to the purchaser at the sale, or his transferee. It appears from the record in the case that Coogle, the administrator of Wm. J. Taylor, was liable to the officers of the superior court for costs on various judgments which he had sued out as administrator, amounting in the aggregate to a large sum. The execution for costs under which the property involved in this controversy was sold was based not directly upon those judgments, but upon a decree rendered in the superior court, which grew out of a bill for injunction and other relief brought to the March term, 1867, of Macon superior court, wherein Coogle, administrator, was plaintiff and Mary J. Taylor and others defendants. This bill set up that the estate of Wm. J. Taylor was

in debt, that the widow had had her dower set apart to her, and that the Armstrong debt was known as a war debt and should be scaled, etc. Subsequently this bill was referred to a master in chancery, who made his report to the court. He found: that a certain sum was in the hands of the administrator; that Wm. J. Taylor owned at the time of his death 615 acres of land, which had not been sold; that his widow had had her dower in said land set apart; that there was due the officers of the superior court, in costs on the various judgments sued out by complainant as administrator as aforesaid, $76.35; that a named attorney at law was entitled to a fee of $320 for certain services specified; and that the master's fee should be $100. And in view of the facts set forth in the report, the master determined "that the complainant as administrator shall during the present year, after giving due and legal notice, sell the lands belonging to the estate as set forth above," and that the attorney representing the administrator should proceed as speedily as possible to collect certain executions specified. Further, that the costs of administration specified above, amounting in the aggregate to $496.35, were of the highest dignity as debts against the complainant as administrator of Wm. J. Taylor. Afterwards the court made a decree and therein ordered "that the report be made the order and judgment of this court." Under such a decree none of the parties in whose favor the master in chancery found certain specified sums to be due could have an execution issued to enforce their individual claims. Of course, if there had been a decree merely in favor of one party against another for a certain sum of money, such a decree could have been enforced by execution under the provisions of our code. But construing the report of the master together with the decree which makes that report the judgment of the court, the decree meant that the complainant in the bill in equity should, under the decree and by virtue of the authority therein given, sell the lands of Wm. J. Taylor, the intestate, and apply the proceeds, or so much thereof as was necessary, to the payment of the debts specified in that decree; and it did not authorize either of the creditors of the estate whose debts were found to be claims of the highest dignity to proceed individually, by the issuance of a fi. fa., for the amount adjudged to be due him individually, and to enforce this fi. fa. by a levy upon the property which the administrator had been ordered

to sell under the decree of the court. What became of this decree of court, or why it was not enforced and complied with, does not appear from the evidence. If the administrator, who was required by the decree to proceed to sell the land, delayed unreasonably in executing the requirement of the decree, he might have been compelled, by application to the court, to execute its commands; or some other step should have been taken either to enforce the decree according to its terms or to vacate it and set it aside, so that the beneficiaries of that decree or creditors whose debts were established might take other steps for the enforcement of their claims against the estate of Wm. J. Taylor. But they could not, without some further adjudication by the court which rendered the decree, have executions for their individual demands issued under the decree which the court did not intend should be a basis for executions of that kind. The issuance of the execution under which the land in controversy was sold was unauthorized by the decree; and having no other basis, the execution was void, and the sale under it was invalid. That sale being invalid and void, the purchasers thereat obtained no title, and the estate of Wm. J. Taylor was never divested of the reversionary interest in the lands out of which the dower of his widow had been assigned. And the heirs of Wm. J. Taylor had the right to maintain this action, the right of action having accrued only a short time before the suit was brought. It follows from what we have said above that the court erred in directing a verdict for the defendants.

Whether there are circumstances raising an estoppel or not may be shown upon the next trial; but that issue was not made under the pleadings in this case, the defendants relying solely upon a sheriff's deed from which they claimed to have obtained title.

*Judgment reversed. All the Justices concur.*